IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| WESLEY THOMPSON, | |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER TO SHOW CAUSE** |
| v. | |
| ANDREW ARCHULETA, et al., | Case No. 2:21-cv-177-TC |
| Defendants. | Judge Tena Campbell |

Plaintiff Wesley Thompson, who is self-represented, brings this civil rights action under 42 U.S.C. § 1983.[1] The court has screened Mr. Thompson's Complaint under its statutory review function. See 28 U.S.C. § 1915A.[2] The court now proposes to dismiss this action because Mr. Thompson has failed to state a claim upon which relief may be granted.

---

[1] The federal statute creating a "civil action for deprivation of rights" reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[2] The screening statute, 28 U.S.C. § 1915A, reads:

> (a) Screening.—The court shall review … a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>     (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

1

Mr. Thompson names as defendants Utah parole agent Andrew Archuleta; West Valley City police detective Alexa Baty; Utah Child Protective Services (UCPS) case worker Michelle Bo; prosecutor Curtis Tuttle; and Utah Board of Pardons and Parole (UBPP) members Carrie Cochran and Chyleen Richey. (ECF No. 5.) Mr. Thompson alleges that the Defendants violated his legal rights concerning (a) his parole conditions and (b) his arrest and the revocation of his parole after he violated those conditions. (Id.) Mr. Thompson requests monetary damages and release from prison. (Id.)

Because Mr. Thompson fails to state a claim upon which relief may be granted, the court proposes dismissal of his Complaint.

## LEGAL STANDARD

When deciding if a complaint states a claim upon which relief may be granted, the court takes all well-pleaded factual statements as true and regards them in a light most favorable to the plaintiff. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is fitting when, viewing those facts as true, the court sees that the plaintiff has not posed a "plausible" right to relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Robbins v. Oklahoma, 519 F.3d 1242, 1247–48 (10th Cir. 2008). Plaintiff has the burden "to frame a 'complaint with enough factual matter (taken as true) to suggest'" entitlement to relief. Robbins, 519 F.3d at 1247 (quoting Twombly, 550 U.S. at 556). When a civil rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional … claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (quoting Twombly, 550

---

(2) seeks monetary relief from a defendant who is immune from such relief.

U.S. at 554-55). In other words, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Red Hawk, 493 F.3d at 1177.

The court construes pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citations omitted). The Tenth Circuit holds that, if pleadings can reasonably be read "to state a valid claim on which the plaintiff could prevail, [they should be read] so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, "the proper function of the district court [is not] to assume the role of advocate for the pro se litigant." Id.; see also Peterson v. Shanks, 149 F.3d 1140, 1143 (10th Cir. 1998).

Dismissing the complaint "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" Curley v. Perry, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (cleaned up) (quoting Hall, 935 F.2d at 1110).

## ANALYSIS

The court considers the allegations against each Defendant in the order in which they appear in the Complaint.

### A. Defendant Chyleen Richey

Mr. Thompson alleges Ms. Richey "ordered, as part of the plaintiff's parole agreement, several illegal parole conditions as applied to him[,]" which Mr. Thompson identifies as special conditions related to the following: "sex stimulus material," "exploit [sic] material," and completion of the "BOPP substance abuse program." (ECF No. 5 at 3.) Mr. Thompson asserts he "signed the parole agreement under duress—and without knowledge of the illegality." (Id.)

But a prisoner has no federal constitutional right to any specific form of parole or release before completing his sentence. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). A state need not offer a parole system, but—if a state opts to offer one—it is free to create and set conditions that must be met to qualify for parole. Greenholtz, 442 U.S. at 7–8. And it cannot violate the Federal Constitution in doing so. Id. Here, Ms. Richey and the UBPP members were not increasing Plaintiff's sentence with parole conditions. If Mr. Thompson did not want to accept the parole conditions, he would have been denied the alternative of parole and would have then served out his sentence, none of which violates the Federal Constitution.

An alternative ground upon which to dismiss Ms. Richey is her immunity as a member of the UBPP. "Members of the [UBPP] are 'absolutely immune from damages liability for actions taken in performance of the Board's official duties regarding the granting or denying of parole.'" Wach v. Cochran, No. 22-4077, 2023 U.S. App. LEXIS 726, at *3 (10th Cir. Jan. 12, 2023) (quoting Knoll v. Webster, 838 F.2d 450, 451 (10th Cir. 1988) (per curiam)). "[A]ll indications are that [Ms. Richey's offer of parole conditions] came within the scope of [her] official duties."

4

Id.  Ms. Richey therefore has "absolute immunity with respect to [Mr. Thompson's] claim for damages."  Id.

For these reasons, the court proposes that Ms. Richey be dismissed.

### B. Defendant Andrew Archuleta

Mr. Thompson asserts that Mr. Archuleta was his parole agent during the relevant time. (ECF No. 5 at 4.)  Mr. Archuleta allegedly investigated Mr. Thompson based on information that Mr. Thompson visited a home where he had contact with a child, violating his parole conditions. (Id.)  Mr. Thompson contends that Mr. Archuleta infringed several of Mr. Thompson's legal rights during the course of the investigation.

#### 1. Violation of privacy and search-and-seizure rights

Mr. Thompson maintains that, on September 21, 2019, "Archuleta violated the plaintiff's privacy rights by ordering the search of the electronic data of the plaintiff's smart phone without permission or a warrant with cause."  (Id. at 5.)  But Mr. Thompson attached to his complaint a copy of his parole agreement, signed by Mr. Thompson and Ms. Richey on July 27, 2018, which contains the following term:

> Pursuant to state law [Utah Code § 77-23-301], while I am on parole I am subject to search and seizure of my person, property, place of temporary or permanent residence, vehicle, or personal effects by a parole officer or by any other law enforcement officer at any time (with or without a search warrant, and with or without cause) ….

(ECF No. 5-2 at 3.)  It therefore appears that Mr. Thompson's claim fails because he had no expectation (a) of privacy for his property or (b) that cause or a search warrant was needed to search and seize his property.

5

### 2. Perjury and inaccurate testimony

Mr. Thompson argues that, on September 21, 2019, Mr. Archuleta found his phone on a bed, while "[o]n 7-23-20 and on 11-5-20 … Archuleta committed perjury by stating he found the smart phone in the plaintiff's pants pocket." (ECF No. 5 at 5.) Mr. Thompson's preliminary hearing in state district court was on July 23, 2020, when Mr. Archuleta was a witness. (ECF No. 5-3.) And Mr. Thompson's motion hearing in state district court was on November 5, 2020, when Mr. Archuleta was a witness. (ECF No. 5-5.) Finally, Mr. Thompson says that "Archuleta claimed at an official hearing that the plaintiff was high risk to offend even though the plaintiff's risk assessments upon existing [sic] the community correctional facility reported a 'low-low' risk." (ECF No. 5 at 7.)

It appears then that the "perjury" and inaccuracies to which Mr. Thompson refers occurred during Mr. Archuleta's testimony in court. As a witness, Mr. Archuleta is "entitled to absolute immunity with respect to any testimony." Romero v. Brown, 859 F. App'x 245, 248–49 (10th Cir. 2021) (citing Briscoe v. LaHue, 460 U.S. 325, 326 (1983)).

This rationale apparently supports dismissal of Plaintiff's claim based on Archuleta's alleged perjury and inaccurate statements.

### 3. Utah Code violations

Mr. Thompson argues that Utah Code Ann. § 77-23-301 (2023) "is ambiguous to data"; that Mr. Archuleta failed to provide a receipt for seized items; that Mr. Archuleta did not hold a Utah Code § 76-10-1212 hearing to determine whether pictures were pornographic; and that Mr. Archuleta failed to return "seized property … within the 75 days required by law." (ECF No. 5 at 5, 11.)

It is unclear exactly what Mr. Thompson may mean by any of this in the context of a federal civil rights case. But he has not stated federal constitutional claims with these allegations, instead challenging Mr. Archuleta's behavior vis-à-vis Utah statutes, for which this § 1983 complaint is not the appropriate vehicle. After all, § 1983 is meant only to provide a cause of action based on a state or local employee's "deprivation of any rights … secured by the [Federal] Constitution and laws." 42 U.S.C. § 1983; see also Diaz v. Lampela, 601 F. App'x 670, 677 (10th Cir. 2015) ("An action under § 1983 … cannot be maintained on the basis of alleged violations of state law." (quoting Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007) (cleaned up)).

**4. Report falsification**

Mr. Thomspon alleges that Mr. Archuleta created an "illegal ruse to reconvict based upon false reports, no physical proof, and failure to seek out other possible suspects," that the reconviction was "based upon the plaintiff's status as a sex offender"; and that Mr. Archuleta thereby illegally prolonged Mr. Thompson's sentence. (ECF No. 5 at 7–8.) Among other things, Mr. Thompson alleges that Mr. Archuleta falsified two reports and information given to law enforcement, with details about, for instance, Mr. Thompson "admitt[ing] to having regular contact" with a child and "taking pictures" of a child. (Id. at 6.) Though Mr. Thompson does not say exactly how these alleged falsifications (and other of Mr. Archuleta's acts under this heading) violated the Federal Constitution, it seems most likely that Mr. Thompson intends to use them to undermine the validity of his consequent convictions and parole revocation.

"In Heck, the Supreme Court explained that a § 1983 action that would impugn the validity of a plaintiff's underlying conviction cannot be maintained unless the conviction has

7

been reversed on direct appeal or impaired by collateral proceedings." Nichols v. Baer, 315 F. App'x 738, 739 (10th Cir. 2009) (citing Heck v. Humphrey, 512 U.S. 477, 486–87 (1994)). Heck keeps litigants "from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions." Butler v. Compton, 482 F.3d 1277, 1279 (10th Cir. 2007) (citation omitted). Heck clarifies that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." 512 U.S. at 486.

Mr. Thompson argues that his constitutional rights were breached in a way that appears to attack his imprisonment. Heck requires that, if a plaintiff requests § 1983 damages, the court must decide whether judgment for the plaintiff would unavoidably imply that a plaintiff's incarceration is invalid. Id. at 487. Here, it seems it would. If this court were to conclude that Mr. Thompson's constitutional rights were violated according to his allegations, that decision would imply that Mr. Thompson's incarceration was invalid. As a result, these claims "must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. Mr. Thompson's sentence does not appear to have been invalidated, so the court proposes the Heck doctrine as a basis upon which to dismiss these claims.

5. Crime of "pattern of unlawful activity"

Citing Utah Code "Title 76 chapter 8 part 5" and "chapter 10 section 1602," Mr. Thompson asserts that Mr. Archuleta's "two false reports and the false statements in court" amount to state crimes. But even if this assertion were true, a federal civil rights action is not the appropriate way to seek the imposition of criminal charges. See Hines v. Allbaugh, No. CIV-15-901-R, 2017 U.S. Dist. LEXIS 122413, at * 23 (W.D. Okla. Aug. 3, 2017) ("[A] declaration that

Defendants have violated criminal statutes is inappropriate in this civil rights case."); Martin v. Creek Cnty. Jail, No. 10-CV-699, 2011 U.S. Dist. LEXIS 44008, at *4 (N.D. Okla. Apr. 22, 2011) ("[P]laintiff lacks standing to bring criminal charges against Defendants."). The court therefore anticipates that it must dismiss any claims based on these allegations.

### 6. Explanation of rights

Mr. Thompson alleges that Mr. Archuleta did not explain Mr. Thompson's rights. (ECF No. 5 at 11.) This curt assertion does not state a claim upon which relief may be granted. Mr. Thompson does not provide detail about the rights that were not explained, and he does not specify when and how he was prejudiced by Mr. Archuleta's failure to explain whatever rights were allegedly at stake.

### 7. Arraignment date

Mr. Thompson alleges that he had "no arraignment until 190 days." (Id. at 11.) But as a parole agent, Mr. Archuleta would not have had the authority to set the arraignment date. Mr. Thompson also has not alleged facts or arguments to suggest how the circumstances during the period before his arraignment amount to a federal constitutional violation. This phrase in the Complaint therefore does not state a claim upon which relief may be granted.

### 8. Equal protection

Mr. Thompson alleges that his "right to equal protection was violated by the defendant … us[ing] bias and discriminatory practices by his actions by targeting the plaintiff for his status as a registered sex offender, when other suspects [sic] available." (ECF No. 5 at 12.)

The Equal Protection Clause forbids a state from "deny[ing] any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. This "is essentially a

direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

But Mr. Thompson's equal protection argument is frivolous because "it relies on an 'indisputably meritless legal theory.'" Avery v. Wade, No. 22-4093, 2022 U.S. App. LEXIS 33905, at *5 (10th Cir. Dec. 9, 2022) (citation omitted) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Mr. Thompson's status as a convict and registered sex offender was the exact reason why he was subject to the parole conditions that forbade him from staying in a home with a child. (ECF Nos. 5-1, 5-2.) Suspicion that he was in a home with a child led to an investigation of whether that fact was true. (ECF No. 5-3.) And evidence found in the home showed that he had been staying there with the child. (Id.) It was precisely his status as a sex-offender parolee that led to this investigation, which was exactly what the sex-offender laws and Plaintiff's parole conditions were meant to trigger under such circumstances. Mr. Thompson's argument that he should not have been "targeted" just because he was a sex offender is not persuasive in this context. The idea that Mr. Archuleta should have taken into consideration other suspects, when Mr. Thompson was the only possible suspect who could violate his own parole conditions, is "clearly baseless" and "without arguable merit." Nietzke, 490 U.S. at 327, 329.

On this basis, the court proposes to dismiss Mr. Thompson's equal protection claim.

### C. Defendant Alexa Baty

Mr. Thompson contends that, as a police detective, Detective Baty impinged on several of Mr. Thompson's legal rights.

1. **Warrant**

Mr. Thompson alleges that Detecive Baty "filed a warrant affidavit with reckless disregard for the truth and failed to supplement her report after being told the truth." (ECF No. 5 at 8.) Though Mr. Thompson does not specify how Detective Bay's behavior violated the Federal Constitution, it seems most likely that Mr. Thompson intends to use this allegation to undercut the legitimacy of his consequent convictions and parole revocation. If that supposition is true, then the Heck doctrine discussed above also operates here to bar this claim. It therefore appears that Mr. Thompson fails to state a claim upon which relief may be granted on this issue.

2. **Utah Code violations**

Mr. Thompson asserts that Detective Baty failed to provide a receipt for his seized items, did not grant him a Utah Code § 76-10-1212 hearing to determine whether pictures were pornographic, and did not return "seized property … within the 75 days required by law." (Id. at 10–11.) These allegations do not assert federal constitutional claims, but instead attack Detective Baty's actions under Utah law. Accordingly, they are improperly included in this § 1983 action, which is meant only to remedy injuries based on a state or local employee's "deprivation of … rights … secured by the [Federal] Constitution and laws." 42 U.S.C. § 1983.

3. **Explanation of rights**

Mr. Thompson argues that Detective Baty did not explain his rights to him (ECF No. 5 at 11.) Again, this terse accusation does not state a proper claim. It does not hint at what rights were unexplained, at what time, and how Mr. Thompson was prejudiced by Detective Baty's failure to explain whatever rights were allegedly at stake.

11

### 4. Search and seizure

Mr. Thompson alleges that Detective Baty "failed to seek a warrant based upon probable cause unrelated to the seized items themselves" and that this failure led to an "unreasonable search and seizure." (Id.) As mentioned above, Mr. Thompson attached to his complaint a copy of his parole agreement, signed by himself and Ms. Richey on July 27, 2018, with the following term:

> Pursuant to state law [Utah Code § 77-23-301], while I am on parole I am subject to search and seizure of my person, property, place of temporary or permanent residence, vehicle, or personal effects by a parole officer or by any other law enforcement officer at any time (with or without a search warrant, and with or without cause) ….

(ECF No. 5-2 at 3.) Once more, Mr. Thompson's claim falls flat because he had no expectation (a) of privacy for his property or (b) that cause or a search warrant would be needed to search and seize his property.

### 5. Arraignment date

Mr. Thompson's argument that he had "no arraignment until 190 days" is also directed at Detective Baty. (ECF No. 5 at 11.) But as a police detective, Detective Baty would not have been positioned to schedule an arraignment date. As mentioned earlier, Mr. Thompson also has not alleged facts or arguments suggesting how circumstances before his arraignment involved a federal constitutional violation. Mr. Thompson's assertion about his arraignment therefore does not state a claim upon which relief may be granted.

## D. Defendant Michelle Bo

Mr. Thompson maintains that, as a UCPS case worker, Defendant Bo

> [c]ommitted tampering with evidence during an active investigation by destroying (deleting) an electronic compilation (recording of witness now passed away)

> claiming an I.T. problem, however he failed to recover the recording using
> software programs at his disposal …. This has victimized, and prolonged
> Plaintiff's incarceration, because the recording was of his alibi now passed away,
> so he can not defend himself.

(Id. at 8.) Mr. Thompson goes on to assert that he was "prejudiced by the delay" that these events caused. (Id.) Mr. Thompson contends that Ms. Bo's "destruction of alibi testimony" violated his "Sixth Amendment right to be confronted with the witnesses against him, and to have compulsory process for obtaining witnesses in his favor …." (Id. at 13.)

By stating that Ms. Bo's actions "prolonged Plantiff's incarceration," it is clear that Mr. Thompson intends to use the claims against Ms. Bo to undermine the validity of his consequent conviction and his parole revocation. If true, then—as discussed above—these allegations are barred by Heck.

The court therefore proposes to dismiss the claims against Ms. Bo because Mr. Thompson fails to state a claim upon which relief may be granted.

### E. Defendant Curtis Tuttle

Mr. Thompson alleges Mr. Tuttle "vindictively and maliciously prosecut[ed] the plaintiff for something he did not do, solely based upon his status as a convicted sex offender, and doing so without actual proof of a crime." (Id.) Mr. Thompson further asserts that Mr. Tuttle's delays throughout Mr. Thompson's criminal proceedings "provided the State a tactical advantage by allowing time to pass which allowed the alibi witness time to pass away from cancer before bringing charges." (Id. at 10.) But prosecutors acting within the scope of their duties enjoy absolute immunity from § 1983 actions. Imbler v. Pachtman, 424 U.S. 409, 424 (1976). Mr. Tuttle's actions, as alleged by Plaintiff, were a form of advocacy in court proceedings. Mr.

13

Tuttle is therefore entitled to absolute prosecutorial immunity from claims. Alternatively, these claims are also barred by the Heck doctrine discussed above.

The Court proposes these bases for the dismissal of Mr. Tuttle.

### F. Defendant Carrie Cochran

Mr. Thompson alleges that Ms. Cochran violated his due process rights based on his "statutory right to the Board limiting the violation incarceration period to 60 days consistent with guidelines under subsection 63m-7-404(5). (See § 77-27-11(6)(c))." (ECF No. 5 at 9; ECF No. 7 at 2.) Mr. Thompson goes on to assert that he "was violated on 9-21-19 … some 86 days later[, while] for his first time violation he should have been granted an immediate release"; still, "Cochran scheduled a paper review claiming guideline exception of new criminal charges pending." (Id. (citing Ex. N).) Mr. Thompson concludes his argument by stating that under "R671-204-1(6) the Board may continue a hearing to 'await the adjudication or resolution of new or additional criminal charges.' (See also R671-522-1) … Criminal charges were not filed until 4-1-20 some 190 days after arrest, due process did not allow for a continuance based on future charges." (Id.)

But the state statutes and rules identified by Mr. Thompson do not support causes of action under § 1983. See St. George v. Weiser, No. 21-1399, 2022 U.S. App. LEXIS 35937, at *14 (10th Cir. Dec. 30, 2022). Under § 1983, Mr. Thompson "must allege the violation of a right secured by the Constitution and laws of the United States." West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added); see also Gaines v. Stenseng, 292 F.3d 1222, 1225 (10th Cir. 2002) ("Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" (quoting Graham v. Connor, 490 U.S. 386,

393–94 (1989))). Here, Mr. Thompson alleges that Ms. Cochran acted to violate state statutes and rules, which (by itself) is inadequate to plead a claim under § 1983. See St. George, 2022 U.S. App. LEXIS 35937, at *14.

### G. Habeas

Mr. Thompson specifically requests "release from prison." (ECF No. 5 at 15.) But the statute Mr. Thompson invokes—section 1983—does not allow a habeas corpus remedy. See Crabtree v. Oklahoma, 564 F. App'x 402, 404 (10th Cir. 2014). Earlier release from incarceration may be attained in court by a writ of habeas corpus only, not by a civil rights case. See Preiser v. Rodriguez, 411 U.S. 475, 489–90 (1973); Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). The court declines to construe Mr. Thompson's Complaint as a habeas petition; although courts must liberally construe pro se pleadings like Mr. Thompson's, that duty typically does not compel characterization of civil-rights claims as habeas claims. See Crabtree, 564 F. App'x at 404.

Mr. Thompson's request for release from custody is another basis on which the court proposes to dismiss his Complaint.

## ORDER

IT IS ORDERED that Mr. Thompson must SHOW CAUSE within thirty days why this Complaint should not be dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B).

DATED this 13th day of May, 2024.

BY THE COURT:

_____
TENA CAMPBELL
United States District Judge